**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>GLOUCESTER ESPRESSO INC.<br><br>Debtor | Chapter 7<br>Case No. 15-13238-MSH |

**MEMORANDUM OF DECISION AND ORDER ON THE OBJECTIONS OF THE
CHAPTER 7 TRUSTEE TO CLAIMS 7 AND 8**

Gary W. Cruickshank, the chapter 7 trustee of the estate of Gloucester Espresso, Inc., the debtor in this case, has objected to the proofs of claim filed by Horizon Beverage Company and M.S. Walker, Inc. (the "Creditors") (claims 7 and 8, respectively, on the court's claims register) by which the Creditors seek payment from the bankruptcy estate as secured creditors. The trustee maintains that the Creditors' claims should be disallowed to the extent they assert security interests in the debtor's liquor license or the proceeds of the sale of that license, and allowed as general unsecured claims.

The facts necessary to decide this matter are straightforward and not in dispute. The Creditors, who are state licensed liquor wholesalers, sold alcoholic beverage products on credit to the debtor, a state licensed liquor retailer. When the debtor failed to pay for certain of those sales it was placed on the so-called "delinquent list" as required by Mass. Gen. Laws ch. 138, § 25.

That statute, whose purpose is to "avoid the evils believed to result from the control of retail liquor dealers by manufacturers, wholesalers or importers through the power of credit," *James J. Sullivan, Inc. v. Cann's Cabins*, 309 Mass. 519 (1941), provides in relevant part:

> It shall be unlawful for any licensee under this chapter to lend or borrow money, directly or indirectly, to or from any other licensee under this chapter. It shall be

unlawful for any licensee under this chapter to receive or extend credit, directly or indirectly, for alcoholic beverages sold or delivered to any licensee engaged in the sale of alcoholic beverages except in the usual course of business and for a period of not more than sixty days, or for any manufacturer, wholesaler or importer of alcoholic beverages, . . . , to acquire, retain or own, directly or indirectly, any interest in the business of any licensee under section twelve . . . *If any licensee does not discharge in full any such indebtedness within such sixty day period, the indebtedness shall be overdue and such licensee shall be delinquent within the meaning of this section. Within three days after a licensee becomes delinquent, the licensee who extended the credit shall mail a letter of notice by certified mail to the commission and a copy thereof to the delinquent licensee. The letter of notice shall be in forms provided by the commission. The notice shall contain the name of the delinquent licensee, the date of delivery of the alcoholic beverages and the amount of the indebtedness remaining undischarged. Within five days after receipt of such a letter of notice, the commission shall post the name and address only of the delinquent licensee in a delinquent list containing the names and addresses of all delinquent licensees.* Such posting shall constitute notice to all licensees of the delinquency of such licensee. . .

No licensee under this chapter shall sell or deliver, directly or indirectly, alcoholic beverages to a licensee whose name is posted on the delinquent list, except for payment in cash on or before delivery, and no licensee who is posted on the delinquent list shall purchase or accept delivery of any alcoholic beverages except for payment in cash on or before delivery…

Whenever the license of any licensee whose name appears on the delinquent list is transferred, the name of the transferee shall appear in the place and stead of the transferor, as of the date of license transfer, in the same manner as if no transfer had occurred, but the provisions of this sentence shall not apply to transfers of licenses by assignees, court-appointed receivers or trustees under a voluntary assignment for the benefit of creditors, provided that prior approval of such assignment is obtained from the commission after notice to all creditors has been given and reasonable time allowed for objections by such creditors. . . (emphasis added).

On August 17, 2015, the debtor filed its voluntary petition under chapter 7 of the Bankruptcy Code in this court.[1] As of that date the debtor was on the state delinquent list with respect to its outstanding indebtedness to the Creditors, $5518.39 to Horizon Beverage and

---

[1] References to the Bankruptcy Code or Code refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

2

$2262.32 to M.S. Walker. Mr. Cruickshank, who was appointed trustee, promptly set about selling the debtor's assets, including its liquor license. After locating a purchaser he filed a motion to sell the debtor's assets free and clear pursuant to Code § 363(f) to which the Creditors objected, invoking Mass. Gen. Laws ch. 138, § 25 and demanding that they be paid their respective claims at the sale closing. Acceding to the Creditors' view of their rights, Mr. Cruikshank entered into a stipulation with the Creditors providing for payment to them at the sale closing. At the hearing on the trustee's motion to sell and the motion to approve the trustee's stipulation with the Creditors, I declined to approve the stipulation pending a more thorough understanding of the Creditors' position, but approved the sale and ordered the Creditors' claims, to the extent valid, to attach to the sale proceeds as required by Code § 363.[2]

Meanwhile, the Creditors timely filed proofs of claim in this case, each claiming secured status based upon asserted liens against the liquor license and certain real estate.[3]  Mr. Cruikshank, presumably having reconsidered his initial settlement with the Creditors, objected to the claims to the extent the Creditors asserted security interests in the liquor license or its sale proceeds. At a hearing on the trustee's objection to their claims, the Creditors conceded that they did not hold liens against the license but rather that, based on the state statute, their claims

---

[2] The Creditors complain that had they known their lien positions would be challenged they would never have gone along with the sale. But even if the Creditors had opposed the sale, I would have had authority to approve it over their objections as Code § 363(f)(1) permits a sale if applicable non-bankruptcy law permits a sale free and clear which, as will be discussed in due course, Mass. Gen. Laws ch. 138, § 25 does. In any event, by requiring the Creditors' lien, to the extent valid, to attach to the sale proceeds which exceed the amount of their claims, the Creditors have suffered no harm as a result of the sale.

[3] The validity of the Creditors' secured claims in any of the debtor's assets other than the liquor license is not a matter currently in dispute and thus their secured claims asserted in those assets will be unaffected by my ruling here.

3

"encumbered" the license. In their post-hearing brief, however, the Creditors allege that they held statutory liens against the license which liens have now transferred to the sale proceeds.

Whether the Creditors held liens or some other kind of encumbrances in the liquor license is immaterial to the outcome here. Whatever the type of encumbrance they claim to hold, that encumbrance must arise under state law, *Butner v. United States*, 440 U.S. 48 (1979), and must constitute an "interest" within the meaning of Code § 363(f). The Creditors maintain that their interests arise from Mass. Gen. Laws. ch. 138, § 25. Specifically, they point to the last paragraph of the above-quoted text which, in circumstances such as those found here, burdens a liquor license with the handicap of the delinquent list, to wit, the inability of the licensee retailer to purchase liquor on credit, and provides that such burden runs with the license, so that a purchaser of the license takes it subject to the delinquent list handicap. This, the Creditors claim, amounts to an encumbrance on the license in their favor.

The question whether the restriction placed on a liquor license pursuant to Mass. Gen. Laws ch. 138, § 25 constitutes a lien or other encumbrance in favor of a liquor wholesaler, has not been answered by any Massachusetts court. I am left, therefore, to predict how the state's Supreme Judicial Court would decide this question. *In re Granderson*, 214 B.R. 671, 674 (Bankr. D. Mass. 1997).

Nowhere in § 25 does "lien," "security interest," "encumber" or words of similar import appear. Our state legislature certainly knew how to confer lien rights on a particular class of creditors when it wanted to, as it did to protect contractors and material suppliers, warehousemen and taxing authorities, among others. *See, e.g.,* Mass Gen. Laws ch. 254, § 4 ("Upon filing or recording a notice, as hereinbefore provided, and giving actual notice to the owner of such filing,

4

the subcontractor shall have a lien upon such real property, land, building, structure or improvement owned by the party who entered into the original contract as appears of record at the time of such filing. . ."); Mass. Gen. Laws ch. 106, § 7-209(a) ("A warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law…"); Mass. Gen. Laws. ch. 62C, § 50(a) ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount, including any interest, additional amount, addition to tax, assessable penalty or forfeiture, together with any costs that may accrue in addition thereto, shall be a lien in favor of the commonwealth. . .").

Also, statutory lien regimes typically include requirements for public notice so that those wishing to engage in transactions with affected entities are able to determine the lien status of the entities' assets. Section 25, however, limits access to the delinquent list only to licensees and their duly authorized agents. Secret liens are not encouraged in our commercial jurisprudence. This suggests that § 25 is not intended to be a lien-creating provision.

Statutes conferring lien benefits upon creditors typically include enforcement mechanisms by which a creditor may realize a recovery on its claim such as through repossession, forced sale or payment in full upon a voluntary sale. No such opportunity is afforded liquor wholesalers by § 25 or any other statute with respect to liquor licenses. In fact, under § 25 the retailer who falls behind and finds itself on the delinquent list can operate indefinitely as long as it pays cash for its purchases.

The Supreme Judicial Court has noted that the purpose of § 25 is to protect liquor retailers by preventing wholesalers from using the power of credit to build networks of tied houses—retailers who are forced to do business only with a particular wholesaler. *Sullivan,* 309 Mass. at 520. *See also Stern v. ABCC (In re J.F.D. Enterprises, Inc.),* 183 B.R 342, 350-51 (Bankr. D. Mass. 1995). Viewed from this vantage, § 25's delinquent list regime is not about assisting liquor wholesalers; it is about preventing retailers from falling into their clutches by running up unpaid bills to the point the wholesalers get to start calling the shots. Section 25 is not a collection vehicle for the wholesale liquor industry, it is the state's attempt to avoid trouble in River City.

In *Stern* the court approved a chapter 7 trustee's sale of a liquor license free and clear of the delinquent list. When the Commonwealth of Massachusetts Alcoholic Beverage Control Commission attempted to impose the delinquent list burden on the license's purchaser, the court found the Commission in violation of the automatic stay provisions of the Bankruptcy Code and enjoined it from doing so.

While the *Stern* court chose not to address directly the question of whether the delinquent list disability constituted a lien on the license, the court's analysis of Mass. Gen. Laws ch. 138, § 25 is instructive. In evaluating the Commission's defense based on the language of § 25, which requires the transferee of a license to take subject to the delinquent list, the *Stern* court noted that the statute created an exception for transfers by assignees, court-appointed receivers and trustees under a voluntary assignment for the benefit of creditors. The court concluded that "if the exceptions contained in the statute permit sales free and clear of the Delinquency List by various functionaries, including the minimally regulated assignee for the benefit of creditors, it is

illogical that the exception would not extend to a highly regulated functionary, such as a trustee in bankruptcy." *Stern* at 350.

I predict that if faced with this issue the Supreme Judicial Court would rule that Mass. Gen. Laws. ch. 138, § 25 does not confer lien status upon liquor wholesalers or otherwise benefit them with similar rights, and that even if it did, those rights would be discharged upon a sale of the license by a bankruptcy trustee. Accordingly, I conclude that the Creditors had no security or other interest in the debtor's liquor license which would entitle them to be paid from the sale proceeds of that license ahead of general unsecured creditors. I, therefore, sustain the trustee's objections to claims 7 and 8 and order that those claims be allowed as general unsecured claims with respect to the debtor's liquor license and the proceeds from its sale.

SO ORDERED.

At Boston, Massachusetts this 16th day of May, 2017.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Gary W. Cruickshank, Esq.
                     Boston, MA
                     Chapter 7 Trustee

                     Stephen C. Garabedian, Esq.
                     Garabedian Law Offices P.C.
                     North Andover, MA
                     for Horizon Beverage Company and
                     M.S. Walker, Inc.